## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMEYA  PILGAONKAR, Individually and On Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| KITOV PHARMACEUTICALS HOLDINGS LTD, ISAAC ISRAEL, and SIMCHA ROCK, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Ameya Pilgaonkar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Kitov Pharmaceuticals Holdings LTD ("Kitov" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class of investors who purchased or otherwise acquired Kitov American Depositary Receipts ("ADRs") pursuant and/or tradeable to the Company's initial public offering on or about November 20, 2015 (the "IPO") and/or on the open market between November 20, 2015 and February 3, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws.

2.     Kitov is a clinical development stage biopharmaceutical company that develops combination drugs for the simultaneous treatment of pain caused by osteoarthritis and hypertension.  The Company's lead drug candidate is KIT-302, a fixed dosage combination product based on the generic drugs celecoxib and amlodipine besylate, that has completed its Phase III clinical study.

3.     The Company was founded in 2010 and is based in Tel Aviv, Israel.  Kitov's ADRs trade on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "KTOV."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company and its Chief Executive Officer ("CEO") Isaac Israel published misleading information concerning the conduct of the Company's clinical trials for its lead drug candidate KIT-302; and (ii) as a result of the foregoing, Kitov's public statements were materially false and misleading at all relevant times.

5.     On February 6, 2017, the Israeli publication *Calcalist* reported that Kitov's CEO Isaac Israel had been detained and questioned by the Israeli Securities Authority ("ISA") on suspicion of publishing misleading information in connection with a clinical trial of KIT-302.

2

6.     On this news, Kitov's ADR price fell $0.33, or 11.46%, to close at $2.55 on February 6, 2017.

7.     On February 7, 2017, the NASDAQ halted trading of Kitov's ADRs.

8.     On February 7, 2017, Kitov issued a news release, advising investors of the ISA's investigation into the Company's public disclosures regarding KIT-302. The news release stated in relevant part:

> TEL AVIV, Israel, Feb. 07, 2017 (GLOBE NEWSWIRE) -- Kitov Pharmaceuticals Holdings Ltd. (NASDAQ:KTOV) (TASE:KTOV), an innovative biopharmaceutical company, announced today that the Israeli Securities Authority has begun a formal investigation into the Company's public disclosures around its lead drug candidate, KIT-302.
>
> J. Paul Waymack, M.D., Sc.D., Chairman of the Board and Chief Medical Officer, stated, "Kitov stands fully behind the validity of all of its clinical trial results. The Company continues to move forward toward the filing of our New Drug Application for KIT-302 with the FDA."
>
> The investigation is in its initial stages, and Kitov's officers are cooperating fully. Kitov's management looks forward to the conclusion of this investigation in the most expeditious manner possible.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act (15 U.S.C. §§77k and 77o), §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78t(a)), and SEC Rule 10b-5 (17 C.F.R. §240.10b-5).

11.     Pursuant to the Securities Act, Defendants are strictly liable for material misstatements in the Offering Materials issued in connection with the IPO. The Securities Act

claims specifically exclude any allegations of fraud, knowledge, recklessness or scienter, do not "sound in fraud" and based solely on strict liability and negligence.

12.    This Court has jurisdiction over this action pursuant to §22 of the Securities Act (15 U.S.C. §77v), §27 of the Exchange Act (15 U.S.C. §78aa), and 28 U.S.C. §1331.

13.    Venue is properly laid in this District pursuant to §22 of the Securities Act, §27 of the Exchange Act, and 28 U.S.C. §1391(b).  At all relevant times Kitov's ADRs traded on the NASDAQ, located within this District.

14.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

<u>**PARTIES**</u>

15.    Plaintiff, as set forth in the attached Certification, acquired Kitov securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.    Kitov is incorporated in Israel.  The Company's principal executive offices are located at One Azrieli Center Round Tower, Floor 23, Tel Aviv, Israel 6701101.  Kitov's ADRs trade on the NASDAQ under the ticker symbol "KTOV."

17.    Defendant Isaac Israel has served at all relevant times as the Company's Chief Executive Officer and Director.

18.    Defendant Simcha Rock ("Rock") has served at all relevant times as the Company's Chief Financial Officer and Director.

4

19.     The Defendants referenced above in ¶¶ 17-18 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Kitov is a clinical development stage biopharmaceutical company that develops combination drugs for the simultaneous treatment of pain caused by osteoarthritis and hypertension.  The Company's lead drug candidate is KIT-302, a fixed dosage combination product based on the generic drugs celecoxib and amlodipine besylate, that has completed its Phase III clinical study.

21.     On September 4, 2015, Kitov filed a registration statement on Form F-1 with the SEC in connection with its IPO.  The registration statement was subsequently amended several times, with the final amended registration statement filed on Form F-1/A on November 20, 2015 (collectively, the "IPO Registration Statement").  On November 23, 2015, the SEC declared the IPO Registration Statement effective.

22.     The IPO Registration Statement contained a preliminary prospectus.  The final prospectus (the "IPO Prospectus") was filed on November 23, 2015.

23.     On or about November 20, 2015, the Company completed its IPO, selling 3.41 million ADRs and raising net proceeds of approximately $13.2 million.

### Materially False and Misleading Statements Issued During the Class Period

24.     The Class Period begins on or about November 20, 2015, when Kitov filed its final IPO Registration Statement with the SEC.  In the Registration Statement, Kitov stated in relevant part:

**Our Company**

…

We are currently focusing our development efforts on KIT-302, which is in an advanced stage of its Phase III clinical study. We are currently not developing KIT-301, for which we have an active investigational new drug, or IND, due to our need to allocate resources for advancing the development of KIT-302. Depending on market acceptance of KIT-302 if approved, we will consider whether to continue the further development of KIT-301.

Where applicable, we intend to seek U.S. Food and Drug Administration, or FDA, approval for the commercialization of our therapeutic candidates through the Section 505(b)(2) regulatory path under the Federal Food, Drug, and Cosmetic Act of 1938, as amended, and in corresponding regulatory paths in other foreign jurisdictions. Our current pipeline consists of two clinical development therapeutic candidates, KIT-301 and KIT-302, which have been cleared for Phase III clinical trials, which will then be subject to review and approval by the FDA. Upon and subject to receipt of the requisite approvals, we intend to commercialize our therapeutic candidates through licensing and other commercialization arrangements with pharmaceutical companies on a global and/or territorial basis. We may also evaluate, on a case by case basis, co-development and similar arrangements, as well as independent commercialization of our therapeutic candidates.

**Our competitive strengths**

We believe there are several advantages to the products we are developing, such as:

- providing a solution to the concerns of physicians who avoid prescribing NSAID treatment for pain caused by osteoarthritis due to its cardiovascular side effects;

- reassuring physicians who are concerned that their patients who are treated for osteoarthritis will be also treated for hypertension, which is a known side effect of NSAID treatments for pain caused by osteoarthritis. This is a particular concern, as hypertension is usually not accompanied by tangible symptoms, and therefore patients may not be aware of their condition or the need to treat it;

- using one drug that also includes an active ingredient that treats hypertension either as an existing condition or as a side effect of using other drugs, ensures that the patient receives the suitable treatment for their disease and for its side effect;

- purchasing one drug as opposed to purchasing two separate drugs may lead to financial savings for patients in the U.S. by requiring payment of just one co-payment and prescription fee as opposed to a double co-payment

and prescription fee. In addition, the use of one combination drug reduces the patient's discretion with respect to whether to purchase and use only one of the drugs and provides a comprehensive dual medical treatment in one combined drug; and

- using calcium channel blockers in our therapeutic candidates as an antihypertensive. Calcium channel blockers are not included in the FDA Safety Information Release for NSAIDs co-administered with ACE inhibitors or with angiotensin II receptor antagonists.

In addition to the aforementioned medical and economic advantages, we believe the combination drugs that we have developed have several commercial advantages, such as reduced development time compared to the development time of new chemical entities (NCEs) and decreased risk factors in the development process. These commercial advantages derive from the fact that combination drugs are based on known materials already approved for use by the FDA. The FDA offers a shortened regulatory procedure referred to as a "505(b)(2) NDA" to approve combination drugs. This procedure may be used to file a request to approve a product that relies on the results of the safety and effectiveness trials performed for the components of the combination in the past by others and not by the filers of the request for approval. Accordingly, the approval process in a 505(b)(2) NDA is shorter and less expensive compared to the approval process for NCEs. In addition, the use of known, proven and safe components recognized by physicians and medical organizations, and the enhanced medical effect of concurrently treating and preventing hypertension, may shorten the time and decrease the costs usually required for the acceptance of the new product in the drug marketplace.

Our strategy

Our goal is to become a significant player in the development of innovative chemical drugs with a clinical and commercial added value, based on known and approved-for-use drugs.

Key elements of our strategy are to:

- develop combination products with clinical and commercial advantages in the treatment of hypertension and pain caused by osteoarthritis, based on a combination of existing drugs and obtain approval thereof from the FDA and other foreign regulatory authorities;

- expand our line of therapeutic candidates through the acquisition or in-licensing of technologies, products and drugs intended to meet clinical needs, thereby utilizing the skills, knowledge and experience of our personnel to develop and enhance the value of additional products, and bring them to market efficiently;

- capitalize on the FDA's 505(b)(2) regulatory pathway to obtain more timely and efficient approval of our formulations of previously approved products, when applicable; and

- cooperate with third parties to both develop and commercialize therapeutic candidates in order to share costs and leverage the expertise of others.

We intend to enter into sub-license agreements with international companies for potential or future therapeutic candidates based on potential upfront and milestone payments, royalties and/or other marketing arrangements, depending on product and market conditions.

25.    On March 18, 2016, Kitov filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended on December 31, 2015 (the "2015 20-F").  For the quarter, Kitov reported a net loss of $1.32 million, or $0.03 per diluted share, on revenue of $1.25 million, compared to a net loss of $750,000, or $0.17 per diluted share, on revenue of $870,000 for the same period in the prior year.  For fiscal year 2015, Kitov reported a net loss of $40,000, or zero per diluted share, on zero revenue, compared to a net loss of $5.25 million, or zero per diluted share, on zero revenue for fiscal year 2014.

26.    In the 2015 20-F, Kitov stated, in part:

On December 15, 2015, we announced that the Phase III, double-blind, placebo-controlled clinical trial for our leading drug candidate, KIT-302, successfully met the primary efficacy endpoint of the trial protocol as approved by the FDA. Data from the trial further revealed that KIT-302 tended to reduce blood pressure more than the widely used hypertension drug amlodipine besylate when administered alone. We plan to file our NDA for marketing approval of KIT-302 with the FDA in the second half of 2016.

A combination drug, KIT-302, simultaneously treats pain caused by osteoarthritis and treats hypertension, which is a common side effect of stand-alone drugs that treat osteoarthritis pain. KIT-302 is comprised of two FDA approved drugs, celecoxib (Celebrex®) for the treatment of pain caused by osteoarthritis and amlodipine besylate, a drug designed to treat hypertension.

The trial protocol, approved by the FDA through the SPA process, was designed to quantify the decrease of hypertension in patients receiving KIT-302. The trial was performed in the U.K. in four groups of twenty-six (26) to forty-nine (49) patients,

with a total of 152 patients. Each patient was treated over a total period of two weeks. Group One was treated with KIT-302, comprised of celecoxib and amlodipine besylate. Group Two was treated with amlodipine besylate only, one of the components of KIT-302. Group Three was treated with celecoxib only, the other component of KIT-302. Group Four was treated with a double placebo. The trial began in June 2014 and was completed in November 2015.

The primary efficacy end-point of the trial was to show that a combination of the two components of KIT-302, as demonstrated in Group One, lowers daytime systolic blood pressure by at least 50% of the reduction in blood pressure achieved in patients in Group Two, who were treated with amlodipine besylate only.

The trial results demonstrated that the number of 152 patients treated was found to be adequate to provide statistical validity and therefore, the results were final. These final results showed that in patients treated with amlodipine besylate only, there was a mean reduction in daytime systolic blood pressure of 8.8 mm Hg. In patients treated with KIT-302, there was a mean reduction in daytime systolic blood pressure of 10.6 mm Hg. Therefore, the primary efficacy endpoint of the study has been successfully achieved with a p value of 0.001.

27.     The 2015 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the 2015 20-F was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

28.     The statements referenced in ¶¶ 24-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company and its CEO Isaac Israel published misleading information concerning the conduct of the Company's clinical trials for its lead drug candidate KIT-302; and (ii) as a result of the foregoing, Kitov's public statements were materially false and misleading at all relevant times.

**<u>The Truth Emerges</u>**

29.     On February 6, 2017, the Israeli publication *Calcalist* reported that Kitov's CEO Isaac Israel had been detained and questioned by the ISA on suspicion of publishing misleading information in connection with a clinical trial of KIT-302.

30.     On this news, Kitov's ADR price fell $0.33, or 11.46%, to close at $2.55 on February 6, 2017.

31.     On February 7, 2017, the NASDAQ halted trading of Kitov's ADRs.

32.     On February 7, 2017, Kitov issued a news release, announcing that the Israeli Securities Authority had begun a formal investigation into the Company's public disclosures around its lead drug candidate, KIT-302.   The news release stated in relevant part:

> TEL AVIV, Israel, Feb. 07, 2017 (GLOBE NEWSWIRE) -- Kitov Pharmaceuticals Holdings Ltd. (NASDAQ:KTOV) (TASE:KTOV), an innovative biopharmaceutical company, announced today that the Israeli Securities Authority has begun a formal investigation into the Company's public disclosures around its lead drug candidate, KIT-302.

> J. Paul Waymack, M.D., Sc.D., Chairman of the Board and Chief Medical Officer, stated, "Kitov stands fully behind the validity of all of its clinical trial results. The Company continues to move forward toward the filing of our New Drug Application for KIT-302 with the FDA."

> The investigation is in its initial stages, and Kitov's officers are cooperating fully. Kitov's management looks forward to the conclusion of this investigation in the most expeditious manner possible.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Kitov securities (i) pursuant and/or traceable to the Company's false and misleading IPO

Registration Statement, and/or (ii) on the open market during the Class Period (collectively, the "Class"). Excluded from the Class are Defendants, the officers and directors of Kitov, members of the Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, given the trading volume of Kitov during the Class Period, Plaintiff believe that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Kitov or its transfer agent, and by brokerage firms, who can be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether Defendants issued materially false and misleading statements;
- whether the IPO Registration Statement was negligently prepared and contained materially misleading statements and/or omitted material information required to be stated therein;
- whether other statements issued by Defendants were materially misleading and/or omitted material information;
- whether Defendants acted with reckless disregard for the truth with respect other statements;

- whether Kitov securities traded on an efficient market;
- the extent to which members of the Class have sustained damages and the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Kitov securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Kitov securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendant Kitov and the Individual Defendants, and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a fraudulent scheme pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and other Class members; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.

46.     The scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members; (ii) artificially inflate and maintain the market price of Kitov securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Kitov securities at artificially inflated prices.

47.     Pursuant to the scheme, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the misleading statements set forth in ¶¶ 24-28 above.

48.     By virtue of their positions at Kitov, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Kitov securities from their personal portfolios.

50.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Kitov, the Individual Defendants had knowledge of the details of Kitov's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Kitov.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Kitov's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of

Kitov securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Kitov's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Kitov securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52.     During the Class Period, Kitov securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Kitov securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Kitov securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Kitov securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class were damaged.

55.     Defendants hereby violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

56.      Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.      During the Class Period, the Individual Defendants participated in the operation and management of Kitov, and conducted and participated, directly and indirectly, in the conduct of Kitov's business affairs.  Because of their senior positions, they knew the adverse non-public information about Kitov's misstatement of income and expenses and false financial statements.

58.      As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Kitov's financial condition and results of operations, and to correct promptly any public statements issued by Kitov which had become materially false or misleading.

59.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Kitov disseminated in the marketplace during the Class Period concerning Kitov's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Kitov to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Kitov within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kitov securities.

60.      Each of the Individual Defendants, therefore, acted as a controlling person of Kitov. By reason of their senior management positions and/or being directors of Kitov, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause,

Kitov to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Kitov and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Kitov.

## COUNT III

**(Violations of Section 11 of the Securities Act Against All Defendants)**

62.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     This claim is brought by Plaintiffs on their own behalf and on behalf of other members of the Class who purchased or otherwise acquired Kitov securities pursuant to or traceable to Kitov's IPO.  Each member of the Class acquired his, her, or its shares pursuant to and/or traceable to, and in reliance on, the Prospectus and Registration Statement.  Kitov is the issuer of the securities through the Prospectus and Registration Statement, on which the Individual Defendants were signatories.

64.     Defendants issued and disseminated, and caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements and/or omissions to the investing public that were contained in the Prospectus and Registration Statement, which misrepresented or failed to disclose, among other things, the facts as set forth above.  By reason of the conduct alleged herein, each Defendants violated and/or controlled a person who violated Section 11 of the Securities Act, 15 U.S.C. §77k.

65.     Kitov is the issuer of the securiites sold via the IPO Prospectus and IPO Registration Statement.  As issuer of these securities, Kitov is strictly liable to Plaintiffs and the Class members for the material misstatements and omissions contained therein.

66.     At the times they obtained their shares of Kitov, Plaintiffs and the members of the Class did so without knowledge of the facts concerning the misstatements and omissions alleged herein.

67.     This claim is brought within one year after discovery of the untrue statements and omissions in and from the IPO Prospectus and IPO Registration Statement that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus and Registration Statement.  It is therefore timely.

68.     At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Kitov securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.

69.     By reason of the foregoing, Plaintiffs and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

## COUNT IV

**(Violations of Section 15 of the Securities Act Against The Individual Defendants)**

70.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     This claim is asserted against the Individual Defendants, each of whom was a control person of Kitov at relevant times.

72.     The Individual Defendants were control persons of Kitov by virtue of, inter alia, their positions as senior officers and/or directors of Kitov, and they were in positions to control and did control, the false and misleading statements and omissions contained in the Prospectus and the Registration Statement.

73.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and Registration Statement were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

74.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Prospectus and Registration Statement and within three years after Kitov shares were sold to the Class in connection with the IPO.  It is therefore timely.

75.     By reason of the above conduct, for which Kitov is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as Kitov pursuant to Section 15 of the Securities Action, 15 U.S.C. 77o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

19

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 7, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars
Los Angeles, California 90067
Suite 1100
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email:  michael@goldberglawpc.com
brian@goldberglawpc.com

*Attorneys for Plaintiff*