**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROTEM COHEN AND JASON BREUNIG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| Plaintiffs, | **Civil Actions No.: 17-cv-00917-LGS** |
| vs. | |
| KITOV PHARMACEUTICALS HOLDINGS LTD., ISAAC ISRAEL, and SIMCHA ROCK, | |
| Defendants. | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

POMERANTZ LLP
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, Floor 20
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ............................ 3

    A.  Procedural History Of The Litigation ..................................................... 3

    B.  Procedural History of the Related State Court Action ........................... 4

    C.  Summary Of Key Terms Of The Proposed Settlement ......................... 4

        1.  Conditional Class Certification ................................................ 4

        2.  Relief to Class Members and Release of Claims ...................... 5

        3.  Class Notice and Settlement Administration ........................... 5

            a)  Notice ............................................................................ 5

            b)  Administration ............................................................. 6

        4.  Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Lead Plaintiff Compensatory Awards ................. 6

        5.  Objections ................................................................................ 7

        6.  Opt Outs .................................................................................. 7

        7.  Termination of the Settlement .................................................. 8

        8.  No Admission of Liability ........................................................ 8

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 8

    A.  The Courts Favor Settlements Of Complex Class Actions ..................... 8

    B.  The Proposed Settlement Merits Preliminary Approval ........................ 10

        1.  The Proposed Settlement Recovery Is Substantively Fair ....................... 10

            a)  The Settlement Was Negotiated By Well Informed Counsel With The Assistance Of A Mediator And Thus Warrants A Presumption Of Fairness ........................................... 10

            b)  The Settlement Is Within The Reasonable Range Of Recovery ..................................................................... 11

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ........................................................................... 15

    A.  The Proposed Settlement Class Meets The Requirements Of Rule 23(a) And 23(b)(3) .................................................................................. 15

    B.  Numerosity ........................................................................................... 16

    C.  Commonality ......................................................................................... 17

    D.  Typicality .............................................................................................. 18

E.     Adequacy ............................................................................................ 18

       1.     Adequacy of the Proposed Class Representatives ................................... 19

       2.     Rule 23(g) Adequacy of the Proposed Class Counsel ............................ 19

F.     Common Questions Predominate and the Class Is Superior to Other
       Methods of Adjudication ................................................................... 20

V.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD
       OF CLASS NOTICE ................................................................................ 22

A.     Notice By Direct Mail And Publication Is Appropriate ....................................... 22

B.     The Proposed Notice Adequately Informs Settlement Class Members
       Of Their Rights In This Litigation ........................................................ 24

PROPOSED SCHEDULE OF EVENTS ................................................................. 25

CONCLUSION .................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc., v. Windsor,*
521 U.S. 591 (1997) .................................................................................................15, 21

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) ............................................................................................17

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981) ..........................................................................................................8, 9

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ...........................................................................10, 11, 12, 14

*Clark v. Ecolab Inc.,*
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y.
May 11, 2010) ..............................................................................................................10, 11

*Consolidated Raid Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ...............................................................................................16

*Diaz v. E. Locating Serv. Inc.,*
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .........................................11

*Dura Pharmaceuticals, Inc. v. Broudo,*
544 U.S. 336 (2005) ..........................................................................................................15

*Fleisher v. Phoenix Life Ins. Co.,*
Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept.
9, 2015) ...............................................................................................................................9

*Fogarazzo v. Lehman Bros.,*
263 F.R.D. 90 (S.D.N.Y. 2009) .........................................................................................16

*Fogarazzo v. Lehman Bros., Inc.,*
232 F.R.D. 176 (S.D.N.Y. 2005) .......................................................................................19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
903 F.2d 176 (2d Cir. 1990) ..............................................................................................18

*Green v. Wolf Corp.,*
406 F.2d 291 (2d Cir. 1968) ..............................................................................................17

*In re Am. Bank Note Holographics, Inc.,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................................................13

*In re Crazy Eddie Sec. Litig,*
    824 F. Supp. 320 (E.D.N.Y. June 11, 1993) ..........................................................14

*In re Deutsche Telekom AG Sec. Litig.,*
    229 F. Supp. 2d 277 (S.D.N.Y. 2002) ...........................................................17, 21

*In re Dynex Capital, Inc. Sec. Litig.,*
    No. 05 CIV. 1897 HB, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) .................................17, 18

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
    05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................. *passim*

*In re HealthSouth Corp. Sec. Litig.,*
    261 F.R.D. 616 (N.D. Ala. 2009) .................................................................18

*In re Marsh Erisa Litig.,*
    265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................23

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ...................................................................14

*In re Petrobras Secs. Litig.,*
    104 F. Supp. 3d 618 (S.D.N.Y. 2015) .............................................................20

*In re Priceline.com Inc. Sec. Litig.,*
    236 F.R.D. 89 (D. Conn. 2006) .................................................................21

*In re Rite Aid Corp. Sec. Litig.,*
    146 F. Supp. 2d 706 (E.D.P.A. 2001) ............................................................14

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.,*
    3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ....................................13

*In re Vivendi Universal, S.A. Sec. Litig.,*
    242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................16, 18

*Knox v. Yingli Green Energy Holding Co. Ltd.,*
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...........................................................20

*Mangone v. First USA Bank,*
    206 F.R.D. 222 (S.D. Ill. 2001) .................................................................23

*Marisol v. Guiliani,*
    126 F.3d 372 (2d Cir. 1997) ....................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ...........................................................................22

*Palacio v E\*trade Fin. Corp.*,
2012 WL 2384419 (S.D.N.Y. June 22, 2012) ......................................................11

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)...............................................................................16

*Smilow v. S.W. Bell Mobile Sys. Inc.*,
323 F.3d 32 (1st Cir. 2003).........................................................................21, 22

*Soberal-Perez v. Heckler*,
717 F.2d 36 (2d Cir. 1983).................................................................................23

*Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*,
No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .............17

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ..........................................................................12

*Thorpe v. Walter Inv. Mgmt. Corp.*,
No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14,
2016) ...............................................................................................................20

*Torres v. Gristede's Operating Corp.*,
Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892 (S.D.N.Y.
Dec. 21, 2010)...................................................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).............................................................................9, 10

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982).................................................................................15

**Statutes**

15 U.S.C. § 78t(a) ...................................................................................................4

15 U.S.C. § 78u-4(a)(7) .........................................................................................24

28 U.S.C. § 1775 ....................................................................................................6

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5.............................................................................................4

Cornerstone Research, *Securities Class Action Settlements: 2017 Review and Analysis* (2018), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis...............................................................................2, 14

*Manual for Complex Litigation (Fourth)* (2004)..........................................................9, 12, 15, 22

*Manual for Complex Litigation (Third)* (1995). .........................................................................10

*Newberg on Class Actions* (4th ed. 2002)..........................................................................9, 17, 23

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 (1986).............................................................................................................................................21

## I.     PRELIMINARY STATEMENT

Lead Plaintiffs Jason Breunig and Rotem Cohen (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their unopposed motion for preliminary approval pursuant to Rule 23(e), Fed. R. Civ. P., of a settlement of this securities fraud class action filed on behalf of purchasers of American Depository Shares ("ADS") in Kitov Pharmaceuticals Holdings Ltd. ("Kitov" or the "Company") during the period November 20, 2015 and February 6, 2017, both dates inclusive (the "Class Period"). While Defendants do not oppose the relief sought herein, the analysis and characterizations of the litigation and Settlement are provided only on behalf of Lead Counsel and Plaintiffs, and do not necessarily reflect the views of Defendants.

Pursuant to the Stipulation of Settlement dated July 27, 2018 ("Stipulation"), filed contemporaneously herewith, Defendants Kitov, Israel, and Rock (collectively "Defendants"), through their insurance carrier(s), have agreed to pay $2,000,000 in cash, as described more fully in the Stipulation, in return for a release of all claims (the "Settlement").[1]  The Stipulation also settles the claims against Defendants Kitov, Israel, Rock, Joseph Gunnar & Co., LLC and H.C. Wainwright & Co., LLC in the consolidated actions styled, *Ng v. Kitov Pharmaceuticals Holdings, Ltd., et al.,* Case No. 17CIV00620, and *Zulch v. Kitov Pharmaceuticals Holdings, Ltd., et al.,* Case No. 17CIV01173 (Superior Court, State of California) (together, "State Action"). The Stipulation is the result of extensive arms' length negotiations between highly experienced counsel, which included a full day mediation session before David Geronemous, Esq., of JAMS mediation services.

Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily

---

[1] All capitalized terms that are not defined specifically in this memorandum have the same meanings as set forth in the Stipulation.

Approving Settlement and Providing for Notice (the "Notice Order") attached to the Stipulation as Exhibit A. The Notice Order will: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Class; and (3) schedule a final approval hearing in which the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of Settlement proceeds among Class Members; (c) Lead Counsel's application for an award of attorneys' fees and expenses; and (d) Plaintiffs' application for a reimbursement award.

Plaintiffs estimate that the proposed Settlement provides the Settlement Class with approximately 28.6% of likely recoverable damages[2] (see below)—well within the historical norm for settlements in securities class actions. *See, e.g.,* Cornerstone Research, *Securities Class Action Settlements: 2017 Review and Analysis* at 8, 10 (2018), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis (noting that in 2017 the median settlement as a percentage of "simplified tiered damages" for a Rule 10b-5 claim was 5.8% while between 2008 through 2017 the average settlement as a percentage of "simplified tiered damages" for cases with a 1933 Act claim with a named underwriter defendant was 12.8%). Thus, the Settlement easily falls "within the range of possible approval" and warrants preliminary approval. Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher. So long as the Settlement appears to be *prima facie* reasonable, Lead Counsel request that the Court preliminarily approve the Settlement so that notice can be sent to all the affected Class Members, who will have a right to be heard at the Final Hearing to be scheduled by the Court.

---

[2] This estimate is based on a calculation of damages performed by Plaintiffs' damages consultant. By not opposing this motion, Defendants are not expressing agreement with Plaintiffs' damage calculation.

Accordingly, Plaintiffs request preliminary approval so that notice of the proposed settlement may be disseminated to the Settlement Class.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Procedural History Of The Litigation

This Action was first filed on February 7, 2017 in the Southern District of New York. By order dated June 15, 2017, the Court appointed Rotem Cohen and Jason Breunig as Lead Plaintiffs and Pomerantz LLP as Lead Counsel. (Docket No. 27). An Amended Complaint was then filed on June 19, 2017 (Docket No. 28), asserting claims against Defendants on behalf of Kitov investors during the Class Period. During that time frame, Kitov had sought to obtain FDA approval to market its lead drug product, KIT-302, a fixed dosage combination product based on two generic drugs designed respectively to treat pain and hypertension.

The Amended Complaint alleges that Defendants failed to disclose certain details relating to the Kitov New Drug Application ("NDA").  Specifically, Plaintiffs claim that Defendants failed to disclose that they had falsified the blood pressure data from the KIT-302 clinical trial in order to convince an independent Data Monitoring Committee ("DMC"), tasked with assessing the statistical validity of the trial results and the necessity of recruiting additional patients, that it had achieved statistical significance and did not need to recruit additional patients for the trial before seeking FDA approval, raising a risk of regulatory scrutiny as well as the risk that the FDA would require additional costly trials or reject the drug entirely. The Amended Complaint further asserts that the market did not learn the truth until the ISA detained Defendant Israel on February 6, 2017 on suspicion of publishing misleading information to investors in the U.S. and Israel in connection with the KIT-302 clinical trial. The Amended Complaint alleges that a *Calcalist* article stated that the ISA found that Kitov made misleading statements in filings with securities authorities, with knowledge, beginning in December 2015 regarding the conclusions

reached by the DMC. Thereafter, Kitov's ADS price fell 11.46% and its warrants fell 10%.

The Amended Complaint charged that Defendants conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5). From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability or damages.

Defendants moved to dismiss the Amended Complaint.  On March 20, 2018, the Court denied Defendants' motion to dismiss as to Defendants Kitov and Israel.  Docket No. 50. After engaging in a full day mediation session with David Geronemous, Esq. of JAMS, the parties reached an agreement in principle to settle the Action on June 19, 2018.

**B.    Procedural History of the Related State Court Action**

The proposed settlement also resolves the State Action.  By order dated April 6, 2017, the Superior Court for San Mateo County appointed Wesley Ng as Lead Plaintiff, and the Rosen Law Firm as Lead Counsel.  An Amended Complaint was filed June 5, 2017.  Settling Defendants filed Demurrers and, on October 25, 2017, the San Mateo Superior Court denied Defendants' demurrers.  The parties to the State Action have informed Judge Weiner that they intend to seek approval of the settlement of both actions through and before this Court.

**C.    Summary Of Key Terms Of The Proposed Settlement**

**1.    Conditional Class Certification**

In connection with the Settlement, Defendants have consented to certification conditioned on final approval of the Settlement, of the following Class:

> All persons or entities that purchased Kitov ADSs between November 20, 2015 and February 6, 2017 (both dates inclusive) and who were damaged thereby. Excluded from the Class are Defendants, all current and former directors and officers of Kitov during the Class Period, and any family member, trust, company,

entity or affiliate controlled or owned by any of the excluded persons and entities referenced above.

As set forth in the class motion papers, Plaintiffs contend that each of the elements of Rule 23(a) and (b)(3) have been satisfied, conditional findings for which are set forth in the Order for Preliminary Approval.

### 2.    Relief to Class Members and Release of Claims

Defendants have agreed to pay $2,000,000 as described more fully in the Stipulation, in return for which all claims that have been, or could have been asserted in the Amended Complaint or in the State Action against Defendants and "Released Parties" will be dismissed, barred and released.

The monies will be deposited in an escrow account maintained by Huntington National Bank and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury.

If the Settlement is approved, none of the monies will revert to Kitov or its insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies other than costs of notice will revert.

### 3.    Class Notice and Settlement Administration

#### a)    Notice

Within 14 days of Preliminary Approval, a proposed Notice and Proof of Claim substantially in the form set forth in Exhibits B and D to the Stipulation will be mailed to each Class Member identified by records maintained by Kitov's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. A Summary Notice will also be published through the Internet, since that medium is most frequently accessed by investors, and is the most cost-effective.

5

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Compensatory Awards. A copy of the Notice, Claims Form and Stipulation of Settlement will also be posted on a website maintained by the Settlement Administrator.

The Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Final Approval Hearing be scheduled 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within 14 days; Class Members to have over 60 days to consider their options and, if they choose, to file objections or opt out of the Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; as well as time for the parties to respond to such objections.

The Notice will also set the date by which claims must be filed on the Settlement Fund, which Lead Counsel requests be 30 days after the Final Approval Hearing.

### b) Administration

After provision of a competitive bid, Lead Counsel selected Strategic Claims Services ("Strategic") to administer the notice and process the claims for the Settlement.[3] Strategic is well known and highly experienced in the administration of securities fraud class action settlements.

### 4. Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Lead Plaintiff Compensatory Awards

No later than 21 days prior to the Final Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney

---

[3] A copy of the Agreement with Strategic will be submitted upon request for *in camera* inspection.

fees, expenses, and Lead Plaintiff Compensatory Awards. Those papers will detail reasons why the Settlement should be approved, as well as Lead Counsel's efforts undertaken on behalf of the Class (including a breakdown of the time and hourly rates of each attorney who contributed to the outcome).

No less than 7 days prior to the Final Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for compensatory awards to Lead Plaintiffs.

## 5. Objections

Any Class Member who objects to the Settlement or related matters must do so 14 days prior to the Hearing, and must send copies of such objections to the Court as well as designated counsel for the Class and Defendants. Any Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To insure the legitimacy of any such objections, the Class Member must file documents evidencing Kitov ADS transactions, as well as submit to the jurisdiction of this court for possible deposition. These measures are intended to thwart "professional objectors" who have appeared from time to time in these actions.

## 6. Opt Outs

Any Class Member who wishes to be excluded must do so by written request accompanied by Kitov transaction documentation, postmarked no later than 14 days prior to the Final Approval Hearing. The opt out must be sent to Lead Counsel, Defendants' Counsel, and the Settlement Administrator (but not the Court).

### 7. Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Class Members owning a previously negotiated amount of ADSs elect to opt out of the Class. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

In the event that the Settlement is not approved by the Court, does not become final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 8. No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Courts Favor Settlements Of Complex Class Actions

The law favors settlement, particularly in class actions and other complex cases. *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). As the Second Circuit has held:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citations and internal quotation marks omitted). In evaluating a proposed class-action settlement, "courts should give proper deference to the private consensual decision of the parties" and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574, *17 (S.D.N.Y. Sept. 9, 2015) (citations omitted). Moreover, the Supreme Court has cautioned that courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

The three-step process for approval of a class-action settlement is: (1) preliminary approval; (2) dissemination of notice of the settlement to the class; and (3) a settlement approval hearing where class members may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* §§ 21.632–.634 (2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of the class members' interests. *See* William Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th

ed. 2002). Plaintiffs respectfully request the Court to take the first step in the process and grant preliminary approval to the Settlement.

### B.      The Proposed Settlement Merits Preliminary Approval

Preliminary approval is merely the prerequisite for disseminating notice to class members so they may decide whether to approve or reject the Settlement. Accordingly:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Third)* § 30.41 (1995).

### 1.      The Proposed Settlement Recovery Is Substantively Fair

In the Second Circuit, courts will examine the negotiating process leading to the settlement. *Wal-Mart,* 396 F.3d 96 at 116. They will also determine whether the settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

### a)      The Settlement Was Negotiated By Well Informed Counsel With The Assistance Of A Mediator And Thus Warrants A Presumption Of Fairness

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Courts also give weight to the parties' judgment that the settlement is fair and

reasonable.  *See Palacio v E*trade Fin. Corp.*, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012) (*citing Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010)); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

The settlement was reached through arm's-length negotiation, which included an all-day mediation before a respected and experienced mediator. The negotiations, though collegial, were adversarial.  They were informed in part by Kitov's low stock price and the fact that the only source for recovery would likely be the Company's insurance policies (a significant portion of which would be expended defending the lawsuit).

In negotiating the Settlement, Plaintiffs had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Of Counsel Tamar A. Weinrib, and the attorneys litigating the State Action, The Rosen Law Firm's Managing Partner Laurence Rosen and attorney Jonathan Stern) are highly experienced in complex litigation and familiar with the legal and factual issues of the case.

In Lead Counsel's view, the Settlement provides substantial benefits to the Class, especially when considering the risk of recovering even less as the litigation continued and the insurance policies were further depleted.

### b)      The Settlement Is Within The Reasonable Range Of Recovery

At the Settlement Hearing, in finally determining whether a settlement is fair, reasonable, and adequate, the Court will have to decide whether to approve the settlement under the factors articulated in  *Grinnell*: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

For preliminary approval purposes, however, the Court need not decide these factors. Rather, if the Court finds that the settlement is "within the range of possible approval" that might be approved under *Grinnell*, it should then order that the Class be notified of the Settlement and given an opportunity to be heard and that the Settlement Hearing be held. *See Manual* at § 40.42 (model preliminary approval order). Here, the Settlement substantially satisfies the test announced by *Grinnell*. Therefore, the Court should grant preliminary approval.

### 1) *The Complexity, Expense and Likely Duration of the Litigation*

The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Here, the parties still faced both fact and expert discovery, including depositions as well as the production and review of voluminous documents. Plaintiffs also planned to file a motion for class certification, supported by a market efficiency expert, which Defendants likely would have opposed, proffering their own market efficiency expert. All of this would have substantially reduced the remaining available insurance.

If the parties did not agree to settle, they would have faced an expensive trial with an uncertain outcome. The jury would have had to determine numerous complex securities law issues, the intricacies of the Food and Drug Administration clinical trial and New Drug

Application approval process, and navigate battles of the experts regarding market efficiency, loss causation, and damages.

### 2) *Stage of Proceedings and Amount of Discovery Completed*

As noted above, the parties had fully briefed Defendants' motion to dismiss, which the Court granted in part and denied in part.  However, all of fact discovery, expert discovery, and trial preparation remained.  All of this would have been time consuming, without necessarily increasing the amount of recovery given the Company's low stock price and the limited nature of the most likely source of recovery, the insurance policies.

### 3) *The Risks of Establishing Liability & Damages*

There are significant risks to proving liability, materiality, loss causation and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain (despite Lead Counsel's confidence). *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012).

### 4) *The Risks of Maintaining the Class Action Through Trial*

Plaintiffs are highly confident that class certification is appropriate for this case and that their anticipated motion for class certification would have prevailed. However, Defendants likely would have contested any class certification motion vigorously.  Regardless, while for purposes of the Settlement, Defendants' consent to certification is conditioned upon ultimate approval and finality, Plaintiffs did not view this as substantive risk factor during negotiations.

### 5) *Reasonableness of the Settlement*

The Settlement provides for a recovery of $2,000,000.  On February 6, 2017, when the market learned that the ISA detained Defendant Israel on suspicion of publishing misleading information to investors in the U.S. and Israel in connection with the KIT-302 clinical trial, and

specifically, regarding the conclusions reached by the DMC, Kitov's ADS price fell 11.46%. The NASDAQ halted trading on February 7, 2017 and when trading resumed on February 9, 2017, Kitov ADS fell another 15.69%. Assuming Plaintiffs could have recovered for both the February 6 and February 9, 2017 drops, damages were estimated at approximately $7 million.[4] The Settlement thus represents approximately 28.6% of the potential most likely recovery. Moreover, the $7 million damages computation assumes that 100% of eligible class members file claims. It is more likely that less than 100% will do so (despite efforts that will be made to notify as many eligible claimants, including posting of notice through the Internet). Similarly, Plaintiffs have estimated maximum damages from the Section 11 claims in the State Action to be $6 million.

In any event, the percentage of recovery here falls well within the range of reasonableness. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 at 715 (E.D.P.A. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Crazy Eddie Sec. Litig*, 824 F. Supp. 320, 328 (E.D.N.Y. June 11, 1993) (approving settlement that was 10% of estimated maximum recovery); *Holden v. Burlington N., Inc*., 665 F. Supp. 1398, 1414 (D. Minn. 1987) 495 F.2d 448 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")[5]

---

[4] As indicated herein, the parties disagree regarding the estimate of damages. Indeed, this is one of the issues that would have been heavily litigated, including a battle of the experts, had the parties not agreed to settle. By not opposing this settlement, Defendants are not expressing agreement with Plaintiffs' damage calculation.

[5] *See* Cornerstone Research, *Securities Class Action Settlements: 2017 Review and Analysis* at 8, 10 (noting that in 2017 the median settlement as a percentage of "simplified tiered damages" for a

IV.     **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

A.     **The Proposed Settlement Class Meets The Requirements Of Rule 23(a) And 23(b)(3)**

The Supreme Court recognizes the utility and necessity of certifying settlement classes so long as absent class members' rights are protected. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997). The Second Circuit has also long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).   Before granting preliminary approval of a class action settlement, however, the Court must determine whether the proposed Class is a proper class for settlement purposes.   *See Amchem Prods. v. Windsor* 521 U.S. 591, 620 (1997); *Manual*, § 21.632.   To certify a class, the Court must assess whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3).  *Id.* at 614.   In certifying a Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; s*ee also* Fed. R. Civ. P. 23(b)(3)(D).

Here, the proposed Settlement Class is defined in the Stipulation as all persons who purchased or otherwise acquired Kitov ADS during the Settlement Class Period. Excluded from the Settlement Class are (i) Defendants and the Individual Defendants' family members, heirs, successors, or assigns; (ii) directors and officers of Kitov and their families; (iii) any entity in

---

Rule 10b-5 claim was 5.8% while between 2008 through 2017 the average settlement as a percentage of "simplified tiered damages" for cases with a 1933 Act claim with a named underwriter defendant was 12.8%). It should be noted that these studies tend to focus on the size of the settlement relative to transactions losses, not recoverable damages, and probably understates the recovery rate. See *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005).

which Defendants have a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court. Courts have generally found securities claims to be particularly well-suited for class treatment because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation. This action is no exception and, as explained below, the proposed Settlement Class satisfies each of the requirements of Rule 23. In support of their contention that proper and sufficient grounds to conditionally certify the class exist under Rule 23(a) and 23(b)(3), Plaintiffs demonstrate the following:

### B. Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean "impossible," as "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities. *EVCI,* 2007 WL 2230177 at *12. Indeed, "numerosity is presumed at a level of 40 members." *Consolidated Raid Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity.") (citation omitted). In this case, although the exact size of the Settlement Class is not yet known, there are likely hundreds, if not thousands, of members in the proposed class. Thus, the numerosity requirement is met.

16

### C.     Commonality

The commonality element of Rule 23(a)(2) requires that "questions of law or fact [are] common to the class." *EVCI,* 2007 WL 2230177 at \*13. In a securities class action like this one the commonality requirement "is applied permissively." *Id*. Commonality is "not defeated by slight differences in class members' positions," *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle," *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968); *see also In re Dynex Capital, Inc. Sec. Litig.,* No. 05 CIV. 1897 HB, 2011 WL 781215, at \*2 (S.D.N.Y. Mar. 7, 2011) ("Class certification will not necessarily be precluded by differing individual circumstances of class members"); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002) ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members"). The Rule 23(a)(2) standard is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class.  This requirement is easily met in most cases.  *See Newberg on Class Actions* (4th ed. 2002) § 3.10.

Where, as here, there are common questions of law and fact pertaining to whether a false statement of material fact or material omission was made, whether the statements/omissions were made with the requisite state of mind, and what is the proper measure of damages, commonality is easily met. *See*, *e.g.*, *Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at \*4 (S.D.N.Y. Dec. 27, 2004) (commonality is satisfied when it is alleged that class members have been injured by the same fraudulent scheme). The commonality element is met.

### D.    Typicality

Pursuant to Rule 23(a)(3), a representative's claim is typical if each class member's claim arose from the same course of conduct and is based on the same legal theories. "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at *13; *see also In re Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). As with commonality, the typicality requirement is not demanding. *In re Dynex Capital, Inc. Sec. Litig.,* 2011 WL 781215, at *2; *see also In re HealthSouth Corp. Sec. Litig.,* 261 F.R.D. 616, 627 (N.D. Ala. 2009) ("Typicality generally presents a low burden that is easily satisfied").

Typicality is met if Plaintiffs and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs are the proposed class representatives in this litigation. As with all other members of the proposed class during the Settlement Class period, Plaintiffs purchased Kitov ADS during the Class Period based on Defendants' allegedly materially false and misleading statements.  The typicality requirement is satisfied.

### E.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first the moving party must show that the interests of the representative parties will not conflict with the interests of the class members, and second, that counsel chosen by the representative parties is

qualified, experienced and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177 at *13. The requirement of adequacy "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol v. Guiliani*, 126 F.3d 372, 378 (2d Cir. 1997). Pursuant to Rule 23(g), adequacy of class counsel is now considered separately from the determination of the adequacy of the class representatives. Both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representatives

The proposed Settlement Class representatives purchased Kitov ADS during the Class Period and have no interests antagonistic to those of the members of the proposed Settlement Class. The proposed representatives seek to recover from Defendants, on their own behalf and on behalf of all members of the Settlement Class, damages allegedly caused by Defendants' unlawful conduct. The representatives' interests are therefore congruent with and not antagonistic to other Settlement Class Members' interests.

### 2.    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005). Plaintiffs' Counsel has retained investigators and researched, drafted, and filed two complaints as well as drafted an opposition brief on the motion to dismiss and mediation submissions. Plaintiffs' Counsel's efforts resulted in this favorable Settlement with Settling Defendants.

Plaintiffs' Counsel is experienced in prosecuting class actions as class counsel and/or lead counsel, having successfully prosecuted class actions in courts throughout the country. Courts have consistently found Plaintiffs' Counsel, Lead Counsel Pomerantz LLP and counsel in the State Action, The Rosen Law Firm, to be well suited as class counsel in stockholder class actions. Courts have recognized the expertise and knowledge both firms provide. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at *25, 28, 31 (S.D. Fla. Oct. 14, 2016) (The Rosen Law Firm and Pomerantz LLP have "developed a reputation for zealous advocacy in securities class actions," "prosecuted this case zealously and skillfully," "devoted significant time and resources to researching, investigating, and prosecuting of this action," and achieved an "outstanding result"); *In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) ("The Court is familiar with the Pomerantz firm from previous matters, and finds that it is well qualified to serve as lead counsel."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"). If this Settlement was not reached, Plaintiffs' Counsel was willing to proceed full steam ahead to ensure that Plaintiffs and the Class received a beneficial outcome. Thus, Plaintiffs' Counsel satisfies Rule 23(g)'s adequacy requirement.

### F.     Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class satisfies Rule 23(b)(3). The Court must find that:

> questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3).

In determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. "Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Smilow v. S.W. Bell Mobile Sys. Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). When common questions represent a significant aspect of a case and can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39. Rule 23(b)(3) is satisfied in the "quintessential securities fraud class action" because there exists "[a]n enormous group of potential plaintiffs" seeking to recover damages and "[t]he focus of this litigation is upon the propriety defendants' conduct" and "defendants' potential liability." *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 101-02 (D. Conn. 2006); *see also In re Deutsche Telekom*, 229 F. Supp. 2d at 282 ("Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws").

In this Action, common questions predominate over individual issues as each investor purchased Kitov ADS which Plaintiffs allege were artificially inflated by the same alleged misrepresentations and/or omissions.  This case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 421 U.S. at 625.

Factors relevant to a finding of superiority include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

(c)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d)    the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

In terms of fairness and efficiency, this Court should balance the merits of certifying a class against other possible methods of adjudication. Many, if not most, of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. Absent a class action, this Court would be faced with the task of potentially litigating numerous lawsuits. *See Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of … groups of people whose individual claims would be too small to warrant litigation"). Plaintiffs believe no difficulties will be encountered in the management of this class action settlement.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Settling Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). This Court should conditionally certify the Settlement Class for settlement purposes only.

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.    Notice By Direct Mail And Publication Is Appropriate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual* at §§ 21.632, 21.633. To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

22

*Trust Co*., 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314). In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The proposed Notice sent to class members by first class mail, is attached as Exhibit B to the Stipulation. The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Hearing.

With the Court's permission, the Notice will be mailed to Settlement Class Members identified by Kitov's transfer agent within 14 days of approval, and mailed to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice, set forth in Exhibit C to the Stipulation, will be published on the Internet within 7 days thereafter.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg* § 8.04; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a Settlement Class with nearly 18.5 million members).

**B.    The Proposed Notice Adequately Informs Settlement Class Members Of Their Rights In This Litigation**

In an action proceeding under Rule 23(b)(3), the notice must inform each class member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice, Exhibit B to the Stipulation, clearly and accurately discloses the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of the Settlement.  The proposed Notice provides information on, *inter alia:* the proposed Settlement Class; the terms and provisions of the Stipulation, including the Settlement Consideration; the relief to the Class and the releases to Defendants that the Settlement will provide; the maximum amount of any award of attorney's fees and reimbursement of expenses to Lead Counsel and of any incentive award to Lead Plaintiffs; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Settlement Class Members' recovery before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Class Member to vary greatly across the Class;

- the general terms of the Settlement;

24

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Lead Counsel (including names, addresses, telephone numbers, and websites); and

- a discussion of the reasons for the Proposed Settlement, including the factors Lead Plaintiffs and the Settling Defendants considered in reaching the Proposed Settlement.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA. The Court should approve the proposed form of Notice and direct that notice be given to the Class as proposed by the parties.

## PROPOSED SCHEDULE OF EVENTS

The Lead Plaintiff proposes the following schedule of events in connection with the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At least 100 days after the Court preliminarily approves the settlement |
| Mailing of Notice and Proof of Claim and Release. | No later than 14 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 11) (the "Notice Date") |
| Publication of Summary Notice. | No later than 21 calendar days after the Notice Date (Preliminary Approval Order ¶ 17) |
| Filing deadline for requests for exclusion. | Postmarked no later than 14 calendar days prior to the Final Settlement Hearing. (Preliminary Approval Order ¶ 21) |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than 21 calendar days prior to the Final Settlement Hearing. (Preliminary Approval Order ¶ 28) |
| Filing deadline for objections. | No later than 14 calendar days prior to the |

25

| | Settlement Hearing. (Preliminary Approval Order ¶ 25) |
|---|---|
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Final Settlement Hearing. (Preliminary Approval Order ¶ 29.) |
| Date for Claims to be Filed | No later than 30 days after the Final Hearing |

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order:  (1) preliminarily approving the Settlement; (2) certifying the Class for Settlement purposes only; (3) certifying Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; and (4) setting a date for a Settlement Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and for an incentive award to Plaintiffs.

Dated: July 27, 2018

Respectfully submitted,

*/s/ Tamar A. Weinrib*
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

***Lead Counsel for the Class***